[Cite as *State ex rel. Stutzman v. Tuscarawas Cty. Bd. of Elections*, 2023-Ohio-3386.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO EX REL.<br>JEFFREY A. STUTZMAN | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J. |
| Relator | Hon. Andrew J. King, J. |
| -vs- | Case No. 2023 AP 09 0048 |
| TUSCARAWAS COUNTY BOARD OF<br>ELECTIONS | |
| Respondent | O P I N I O N |


CHARACTER OF PROCEEDING:   Writ of Mandamus

JUDGMENT:   Denied

DATE OF JUDGMENT ENTRY:   September 21, 2023

APPEARANCES:

For Relator

MATTHEW P. MULLEN
OWEN J. RARRIC
TERRY J. EVANS
KRUGLIAK, WILKINS, GRIFFITHS
& DOUGHERTY CO., L.P.A.
4775 Munson Street
P. O. Box 36963
Canton, Ohio 44735-6963

For Respondent

RYAN STYER
PROSECUTING ATTORNEY
KRISTINE BEARD
ASSISTANT PROSECUTOR
TUSCARAWAS COUNTY
PROSECUTOR'S OFFICE
125 East High Avenue
New Philadelphia, Ohio 44663

*Wise, J.*

{¶1} Relator Jeffrey A. Stutzman filed a Complaint for Writ of Mandamus against Respondent Tuscarawas County Board of Elections on September 8, 2023. The issue presented in Mr. Stutzman's mandamus action is whether his name should be placed on the November 7, 2023 ballot for the office of mayor for the Village of Sugarcreek.

## I. Background

{¶2} Mr. Stutzman currently serves as the mayor for the Village of Sugarcreek. He seeks another term in office. Mr. Stutzman circulated a "Nominating Petition and Statement of Candidacy" designated in the top left corner of the form as "Form No. 3-O Prescribed by the Ohio Secretary of State (07-21)[.]" On this form, Mr. Stutzman completed the "Statement of Candidacy"[1] and "Nominating Petition" sections. He then collected 18 signatures on the form and signed the "Circulator Statement[.]"

{¶3} Also submitted along with this form were four part-petitions, which are copies of page 2 of Form 3-O. Each part-petition contains 13 signatures and the "Circulator Statement" under the signatures, completed by Mr. Stutzman. The four part-petitions were attached to the completed Form 3-O. Below is an example of one of the four part-petitions. No statement of candidacy or nominating petition appears on the four part-petitions.

---

[1]    The term "statement of candidacy" and "declaration of candidacy" are used interchangeably in the opinion. The Ohio Secretary of State's form 3-O uses the term, "Statement of Candidacy."

| Signature | Voting Residence Street Number and Address | City, Village, or Township | County | Date of Signing |
|---|---|---|---|---|
| Mark H. Klaiber | 809 BASEL ST SW | SUGARCREEK | Tusc. | 5-29-23 |
| Esther R. Klaiber | 809 Basel St SW | Sugarcreek | TUSC | 5-29-23 |
| Gary Abt | 327 3rd St. | Sugarcreek | Tuc | 6-1-23 |
| Jean Abbot | 327 3rd St. SW | Sugarcreek | Tusc | 6-1-23 |
| Onley Heath | 404 Douck Rang | Sugarcreek | Tusc | 6-1-23 |
| Robin Walker | 370 N. Broadway | Sugarcreek | Tusc. | 6-7-23 |
| RevEl Ray | 510 W. Main St | Sugarcreek | Tusc | 6-7-23 |
| Angelina Basei | 418 Moyle St SW | Sugarcreek | Tusc. | 6-7-23 |
| Susan Knolton | 827 Basel St. | Sugarcreek V | tusc | 6-15-23 |
| Eric Knotts | 827 Basel St SW | Sugarcreek | Tusc | 6-15-23 |
| Courtney Hicks | 835 Basel St SW | Sugarcreek | Tusc | 6-17-23 |
| Nate Nichy | 835 Basel St SW | Sugarcreek | Tusl | 6-17-23 |
| Nancy Strawn | 423 Luzern St SW | Sugarcreek | Tusc | 6-17-23 |

WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE

**Circulator Statement**

*Must be completed and signed by the circulator.*

I, ___Jeffrey Allen Sturman___ declare under penalty of election falsification that I reside at the address
<sub>Printed Name of Circulator</sub>
appearing below my signature; that I am the circulator of the foregoing petition containing ___18___ signatures;
that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief
qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person
whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code..

_____
Signature of Circulator

817 Basel St SW
Permanent Residence Address

Sugarcreek      OH    44681
City or Village     State    Zip Code



FILED

'23 JUL 26 AM 12:30

TUSC CO BD ELECTION

{¶4} On July 24, 2023, Mr. Stutzman filed his petition with the Board of Elections. It is undisputed Mr. Stutzman's petition contains a total of 70 valid signatures. However, on August 21, 2023, the Board of Elections refused to certify Mr. Stutzman's petition for placement of his name on the general election ballot for November 7, 2023 because he "needed to attach a copy of page one to every additional page two of Form 3-O." Complaint at ¶ 23. On August 25, 2023, Mr. Stutzman objected to the Board of Elections' decision, which was apparently denied resulting in the present writ.

## II. Analysis

{¶5} To prevail on his writ, Mr. Stutzman must prove he has a clear legal right to have his name placed on the November 7, 2023 ballot, the Board of Elections is under a clear legal duty to provide the requested relief, and Mr. Stutzman has no adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. We find Mr. Stutzman has established he has no adequate remedy in the ordinary course of the law due to the nearness of the general election. *See State ex rel. Greene v. Montgomery Cty. Bd. of Elections*, 121 Ohio St.3d 631, 2009-Ohio-1716, 907 N.E.2d 300, ¶ 10.

{¶6} "In extraordinary actions challenging the decisions of the Secretary of State and boards of elections, the standard is whether they engaged in fraud, corruption, or abuse of discretion, or acted in clear disregard of applicable legal provisions." *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Here, there is no evidence or argument regarding fraud or corruption. Instead, the dispositive issues are whether the Board of Elections abused its discretion or clearly disregarded applicable law when it rejected Mr. Stutzman's petition.

{¶7} Mr. Stutzman maintains R.C. 3513.261 only requires an individual pursuing a candidacy for elected office for a nonpartisan or municipal office to complete the statement of candidacy portion of such petition, including all part-petitions, before circulation for signature. He contends he complied with the statute through completion of the information required within the statement of candidacy and nominating petition and therefore, he substantially complied with the revised code for purposes of his access to the general election.

{¶8} In support of his argument, Mr. Stutzman references 19 separate petitions filed as Exhibit 7 to his Merit Brief in Support of Writ of Mandamus. He claims the Board of Elections accepts and certifies single-sided petitions. Mr. Stutzman maintains for each of the 19 petitions the petition signer would need to turn to the front page to see the statement of candidacy and nominating petition. He claims his petition is no different.

{¶9} Further, Mr. Stutzman points out that page 2 of Form 3-O, which includes lines for up to 13 signatures and the circulator statement, does not contain a statement of candidacy or nominating petition. He also notes neither the statutes nor Form 3-O require the form be printed double-sided on one piece of paper.

A. *Strict vs. substantial compliance with election statutes*

{¶10} In *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 15, the Ohio Supreme Court held, "[t]he general rule is that, unless there is language allowing substantial compliance, election statutes are mandatory and must be strictly complied with." Under R.C. 3513.261, when the General Assembly references the concept of substantial compliance, it does so with regard to the issue of "form." *State ex rel. Simonetti v. Summit Cty. Bd. of Elections*, 151 Ohio St.3d 50, 2017-

Ohio-8115, 85 N.E.3d 728, ¶ 26. For example, the first sentence of the statute provides: "A nominating petition may consist of one or more separate petition papers, each of which shall be substantially in the *form* prescribed in this section." (Emphasis added.)

{¶11} Thus, the *Simonetti* Court explained R.C. 3513.261 "requires only substantial compliance with the prescribed 'form' of the nominating petition, but the statute contains no language regarding substantial compliance as to other matters." *Simonetti* at ¶ 26. "When considering questions of substantial compliance with an election statute, we examine whether the requirement at issue 'serves a public interest and a public purpose.' " *Id.* at ¶ 27. If these interests do not relate to merely the form of a nominating petition, but instead the substance of the petition, then strict compliance is required. *Id.*

B. *Inclusion of the statement of candidacy requires strict compliance under R.C. 3513.261.*

{¶12} The statute at issue, R.C. 3513.261 provides, in pertinent part:

> A nominating petition may consist of one or more separate petition papers, each of which shall be substantially in the form prescribed in this section. If the petition consists of more than one separate petition paper, the statement of candidacy of the candidate or joint candidates named need be signed by the candidate or joint candidates on only one of such separate petition papers, *but the statement of candidacy so signed shall be copied on each other separate petition papers before the signatures of electors are placed on it.* (Emphasis added.) * * *

{¶13} We find the above italicized statutory language dispositive of the issue here. The four part-petitions filed by Mr. Stutzman do not contain a statement of candidacy. Only the first page Form 3-O contains a completed statement of candidacy. The four part-petitions containing 13 signatures each only contain a Circulator Statement. R.C. 3513.261 clearly requires the statement of candidacy to be included on each separate petition paper before electors' signatures are placed on the form. That did not occur here. This requirement is noted in *Simonetti*, where the Court stated in dicta that "R.C. 3513.261 required each petition paper to include a statement of candidacy signed by Simonetti." *Simonetti* at ¶ 3.

{¶14} Mr. Stutzman contends candidates need only substantially comply with R.C. 3513.261. He cites *State ex rel. Osborn v. Fairfield Cty. Bd. of Elections*, 65 Ohio St.3d 194, 196, 602 N.E.2d 636 (1992). In *Osborn*, relator filed part-petitions but unlike here, each part-petition contained a statement of candidacy as required by R.C. 3513.261. The issue in *Osborne* was that the statements of candidacy contained differing house district numbers. *Id*. at 195. The Court found the difference between the two versions of the statements of candidacy to be immaterial concluding there was substantial compliance with R.C. 3513.261.

{¶15} Mr. Stutzman also cites *State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 93 Ohio St.3d 535, 539, 2001-Ohio-1627, 757 N.E.2d 319. In *Phillips*, the Ohio Supreme Court denied a writ of mandamus and writ of prohibition to prevent a county board of elections from placing a candidate on the ballot whose nominating petition and statement of candidacy contained an incorrect term-ending date. *Id*. at 540. The Court concluded

the nominating petition and statement of candidacy substantially complied with statutory form requirements. *Id.*

{¶16} Finally, Mr. Stutzman cites *State ex rel. Yacobozzi v. Lorain Cty. Bd. of Elections*, 27 Ohio App.3d 280, 500 N.E.2d 905 (9th Dist.1985), where relator failed to complete the day of the month on which the declaration of candidacy was completed. The court granted relator's writ of mandamus for placement of his name on the ballot. *Id.* at 282. The court explained, " '[a]bsolute compliance with every technicality should not be required in order to constitute *substantial* compliance, unless such complete and absolute conformance to each technical requirement of the printed form serves a public interest and a public purpose.' " (Emphasis sic.) *Id.* at 281, citing *Stern v. Bd. of Elections*, 14 Ohio St.2d 175, 180, 237 N.E.2d 313 (1968). The court concluded because relator's statement of candidacy was completely filled out before circulation among electors, the electors were "properly informed." *Id.* The only omission "misled no one," and in the absence of any fraud or deception, public policy favored access to the ballot. *Id.*

{¶17} *Osborn, Phillips* and *Yacobozzi* are distinguishable because none of these cases dealt with part-petitions missing the statement of candidacy. In the present matter, the statement of candidacy is completely missing from the four part-petitions. We cannot assume this omission misled no one. As explained in *Simonetti*, the requirement that a candidate sign the statement of candidacy on the petition paper before circulating the nominating petition advances two public purposes. *Simonetti* at ¶ 27. First, it guarantees adequate notice of the candidate's identity to electors and second, it ensures the petition will not be used for a candidacy other than the one intended by the signers. *Id.*

Importantly, the Court concluded "these interests do not relate merely to the 'form' of a nominating petition but go to the very substance." *Id*.

{¶18} Likewise, Mr. Stutzman's failure to include the statement of candidacy on the four part-petitions does not merely relate to the "form" of the part-petitions. R.C. 3513.261 specifically requires the statement of candidacy be placed on each part-petition. This requirement goes to the substance of the statute. Therefore, strict compliance was required under R.C. 3513.261 with regard to the placement of the statement of candidacy on each part-petition.

{¶19} We acknowledge Mr. Stutzman avers in his affidavit that he asked each elector to review the nominating petition and statement of candidacy, that he told each elector that he desired to be a candidate for mayor of Sugarcreek, Ohio and that each elector that signed the petition knew he/she was nominating Mr. Stutzman for mayor of Sugarcreek. Affidavit of Jeffrey A. Stutzman, ¶¶ 5-7. However, we cannot ignore the mandate of R.C. 3513.261 that clearly requires the statement of candidacy be copied on each other separate petition before electors sign.

{¶20} Our conclusion is supported by *State ex rel. Wilson v. Hirsch*, 69 Ohio St.3d 13, 630 N.E.2d 319 (1994). Although *Wilson* involved a congressional candidate and therefore, a different set of statutes, the statute referenced in *Wilson* is similar to the requirements of R.C. 3513.261. R.C. 3513.09, the statute under consideration in *Wilson*, also requires that if a petition "with a declaration of candidacy consists of more than one separate petition paper, the declaration of candidacy of the candidate named need be signed by the candidate * * * on only one of such separate petition papers, but the

declaration of candidacy so signed shall be copied on each other separate petition before the signature of electors are placed on it."

{¶21} The relator in *Wilson* filed a part-petition that contained a declaration of candidacy and attached to it three additional part-petitions that did not contain declarations of candidacy. *Id.* at 15. The Court held this violated the strict requirement in R.C. 3513.09 that the signed declaration of candidacy "shall be copied on each other separate petition paper." *Id.* at 16. Relator argued substantial compliance with the statute. The Court rejected this argument explaining, "R.C. 3513.07[2] may be satisfied by substantial compliance with the form of a declaration of candidacy and petition, but the omission of the entire declaration from three petition papers would hardly qualify as substantial compliance." *Id.*

{¶22} Here, the failure to include the statement of candidacy on four of the part-petitions violated the statutory requirement in R.C. 3513.261 that the statement of candidacy be copied on each other separate petition papers before the electors' signatures are placed on it. This is a substantive statutory requirement that necessitates strict compliance. Therefore, the Board of Elections did not abuse its discretion when it refused to certify Mr. Stutzman's petition for the November 7, 2023 ballot.

### III. Conclusion

{¶23} For the foregoing reasons, Mr. Stutzman's writ of mandamus is denied.

---

[2] R.C. 3513.07 is the Form of Declaration of Candidacy; Petition for Candidate.

{¶24} WRIT DENIED.

{¶25} COSTS TO RELATOR.

{¶26} IT IS SO ORDERED.


By: Wise, J.

Hoffman, P. J., concurs.

King, J., concurs separately.


JWW/ac  0915

*King, J. concurs separately,*

{¶ 27} I join the opinion in full and agree with the judgment. I write separately to address that I think the Board of Elections not only handled the petitions correct facially but also properly handled the submission of the extrinsic materials.

{¶ 28} As the opinion discusses, election statutes generally require strict compliance. R.C. 3501.38(I)(1) states, "[n]o alterations, corrections, or additions may be made to a petition after it is filed in a public office." If a candidate were to request the petition back to fix errors on one or more part petitions, a board of elections would be prohibited from doing so. That is the essence of what the relator seeks to do through the later filed affidavits. They seek to correct what are otherwise facial, fatal errors in the part petitions.

{¶ 29} The Supreme Court has held that in certain instances a board must consider later submitted testimony or affidavits provided by a rejected candidate to get the candidate placed on the ballot. *State ex rel. Crowl v. Delaware County Board of Elections*, 144 Ohio St. 3d 346, 2015-Ohio-4097, 43 N.E.3d 406; *State ex rel. Scott v. Franklin County Board of Elections*, 139 Ohio St. 3d 171, 2014-Ohio-1685, 10 N.E.3d 697. The touchstone of this line of cases is that if a board of elections chooses to hold a hearing and receive evidence, it abuses that discretion by disregarding "the evidence that hearing produced." *State ex rel. Scott* at ¶ 19. The Supreme Court's decisions comport with the idea of fairness and procedural due process.

{¶ 30} Here the Tuscarawas County Board of Elections was neither obligated to hold a hearing nor did it hold a discretionary hearing. If the rule from *State ex rel. Scott* were extended to any situation where an aggrieved filer could fix an error with affidavits,

such a rule would undermine both the principle that strict compliance is required and R.C. 3501.38(I)(1). Moreover, the General Assembly has provided for protest hearings in certain instances (R.C. 3513.263 and 3501.39) but not others. Nor did the Supreme Court require boards of elections to hold hearings in *State ex rel. Scott*. Accordingly, I also conclude the board of elections did not err either by refusing to reverse its decision after receiving the affidavits or by not electing to hold a hearing after receiving the affidavits.